UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

MOBILE MEDICAL INTERNATIONAL          :
CORPORATION,                          :
                                      :
    Plaintiff,                        :
                                      :
        v.                            :    Case No. 2:07-cv-231
                                      :
ADVANCED MOBILE HOSPITAL SYSTEMS,     :
INC., TRACTUS MEDICAL, INC., and      :
DOES 1-10,                            :
                                      :
    Defendants.                       :

**MEMORANDUM OPINION and ORDER:   CLAIM CONSTRUCTION**

Plaintiff Mobile Medical International Corporation ("MMIC")

seeks a declaratory judgment of invalidity and/or non-

infringement of U.S. Patent No. 4,915,435 ("the '435 patent")[1]

entitled "Mobile Operating Room With Pre and Post-Operational

Areas."  Defendants Advanced Mobile Hospital Systems, Inc.

("AMoHS"), and Tractus Medical, Inc. ("Tractus"), its subsidiary,

have counterclaimed for patent infringement.

MMIC filed this lawsuit on October 30, 2007.  AMoHS and

Tractus answered and counterclaimed on January 28, 2008.  MMIC

filed requests for reexamination of the '435 patent with the

United States Patent and Trademark Office ("PTO") on February 25,

2008, and March 29, 2009.  The case was stayed from August 27,

2008 until April 30, 2012, pending the outcome of the

reexaminations.  During the first reexamination, the PTO rejected

---

[1] The '435 patent, issued on April 10, 1990, expired on April 5, 2009.

claims 19-25 and 31-35 of the '435 patent as unpatentable, and the patentee canceled the claims.  During the second reexamination, the PTO examiner rejected the remaining claims, but was reversed by the Board of Patent Appeals and Interferences ("BPAI"), which found claims 1-18 and 30 valid in view of the prior art asserted.

The patent describes a transportable van in which invasive surgical procedures can be performed.  It includes a laterally expandable portion that defines the operating room, with an operating table that need not be removed when the expandable portion is retracted.  The unit includes all of the essential facilities for complete invasive surgical procedures, including pre- and post-op areas.

The parties have sought construction of several terms in claims 1-18 and 30, and the Court held a *Markman* hearing on June 7, 2013.  *See Markman v. Westview Instruments, Inc.*, 517 U.S. 370 (1996).

## I.   Legal Standards Governing Claim Construction

"'[T]he claims of a patent define the invention,'" and determine the scope of the patentee's right to exclude.  *Phillips v. AWH Corp.*, 415 F.3d 1303, 1312 (Fed. Cir. 2005) (en banc) (quoting *Innova/Pure Water, Inc. v. Safari Water Filtration Sys., Inc.*, 381 F.3d 1111, 1115 (Fed. Cir. 2004)).  "[T]he words of a claim 'are generally given their ordinary and customary

meaning,'. . . the meaning that the term would have to a person of ordinary skill in the art in question at the time of the invention." *Id.* at 1312-13 (quoting *Vitronics Corp. v. Conceptronic, Inc.*, 90 F.3d 1576, 1582 (Fed. Cir. 1996)).

A person of ordinary skill in the art is deemed to read the claim term not only in the context of the particular claim in which the disputed term appears, but in the context of the entire patent, including the specification (the written description of the invention) and the prosecution history of the patent, if it is in evidence. *Id.* at 1313; *Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 979-80 (Fed. Cir. 1995), *aff'd* 517 U.S. 370 (1996). Examination of this *intrinsic* evidence ordinarily will resolve any ambiguity in a disputed claim term. *Vitronics*, 90 F.3d at 1583. "[E]xtrinsic evidence, which 'consists of all evidence external to the patent and prosecution history, including expert and inventor testimony, dictionaries, and learned treatises,'" may be useful in claim construction as well, although it is less significant than the intrinsic record. *Phillips*, 415 F.3d at 1317 (quoting *Markman*, 52 F.3d at 980).

**II.  Discussion**

The parties now apparently agree that "invasive surgery" should be construed as "a therapeutic medical procedure that involves the introduction of a physical object into or through human skin. Likewise they do not dispute that "expand" has its

ordinary meaning of "increase volume or scope."

Several of the disputed claim terms are recited in claim 1

of the '435 patent, which is reproduced below with the disputed

claim terms in bold.

> 1.  A mobile invasive surgery **van** capable of being
> transported on the roads and highways and equipped with
> **essential equipment for invasive surgery** to be
> performed within the **van**, said **van** comprising:
>> a **main body section that is capable of being
>> towed, mounted on wheels for mobility by a
>> separate power section**;
>> an expandable portion of said main body provided
>> by **telescoping side sections** thereof which
>> move outwardly from the main body portion in
>> order to form an **expanded invasive surgery
>> room**; and
>> an operating table centrally located in said
>> expandable section, said table being **stowable**
>> so that the expandable section may be **nested**
>> or expanded without removal of said surgery
>> room operating table from said **van**.

'435 patent col.9 l.31-47.

**A.   Van (Claims 1-18, 30)**

The term appears both in the preamble and in the body of the

claims.  MMIC proposes that the term be construed as "a vehicle

capable of being driven on roads and highways with integral

wheels for transporting goods."  AMoHS first proposed that the

term be construed as "a unit that has walls enclosing an interior

space and lacks its own source of propulsion," and now proposes

that the term be construed as "trailer."  According to MMIC, the

patent describes a motor vehicle that has its own power source.

According to AMoHS, the patent describes a unit that may be

transported over the roads by a separate power source.

Claim 1 recites that the "van" comprises "a main body section that is capable of being towed, mounted on wheels for mobility by a separate power section."  '435 patent col.9, l.36-38.  Similarly, Claim 12 recites that the "van" comprises "a main body portion being mounted on wheels for mobility by a detachable trailer section."  '435 patent col. 10 l.61-62.  In Claim 30, as it depends from Claim 26 as it depends from Claim 24, the patent recites that a mobile invasive surgery structure comprises "a main van mounted on wheels for mobility by a detachable trailer section."  '435 patent col. 12 l. 15-16.

The specification describes in great detail a unit which contains all essential facilities for performing surgeries, including pre- and post-op areas.  Neither in the specification nor the claims however is there a recitation or description of a power section that moves the unit.  The patent does not claim this source of mobility as part of the invention; it simply claims a unit mounted on wheels that may be moved, noting that it may be moved by a separate or detachable power source.  For example, Figure 1, showing a top plan view of a preferred embodiment of the invention, shows the distinct areas of the invention, including a surgery area, a pre-op and post-op area, a toilet and dressing area and a cleanup area.  The entire figure is labeled "the van."  '435 patent fig. 1.  No engine or other

structure for driving the unit is shown.

The claimed invention does not have an integral engine. Although the specification without question contemplates that the invention can be moved from location to location over roads and highways, the '435 patent does not claim the entire vehicle.  The term is construed as "a wheeled transportable unit, or trailer."

**B.    Essential equipment for invasive surgery (Claims 1, 12 and 30 via 24)**

The term appears in the preamble of the claims.  "[A] preamble limits the invention if it recites essential structure or steps, or if it is 'necessary to give life, meaning, and vitality' to the claim.'"  *Catalina Mktg. Int'l, Inc. v. Coolsavings.com, Inc.*, 289 F.3d 801, 808 (Fed Cir. 2002) quoting *Pitney Bowes, Inc. v. Hewlett-Packard Co.*, 182 F.3d 1298, 1309 (Fed. Cir. 1999)).  "The determination of whether preamble recitations are structural limitations or mere statements of purpose or use 'can be resolved only on review of the entirety of the patent to gain an understanding of what the inventor[] actually invented and intended to encompass by the claim.'"  *Rowe v. Dror*, 112 F.3d 473, 478 (Fed Cir. 1997) (quoting *Corning Glass Works v. Sumitomo Elec. U.S.A., Inc.*, 868 F.2d 1251, 1257 (Fed. Cir. 1989)).

Reviewing the entire patent, it is clear that the inventor intended to claim a mobile operating room that included all of the essential requirements for invasive surgery that a permanent

and fixed hospital facility has.  This is evident from the Summary of the Invention.  *See* '435 patent col.2 l.8-16 ("The mobile vehicle of this invention . . . includes all of the operating requirements called for in fixed hospital facilities and . . . includes . . . all of the essential facilities for complete invasive surgical procedures . . . .").  One state's regulations are featured in the Description of the Preferred Embodiment.  *See* '435 patent col. 4 l. 37-42 ("The construction of the mobile surgical room **100** will follow closely the guidelines issued by the State of California Office of Statewide Health Planning and Development (OSHPOD) 'surgical and anesthesia service space' outlined clearly in Section 2-1016A, Title 24 of the California State Building Code."); *see also* '435 patent col. 9 l. 10-13 ("It is a feature of this invention that all essential operational equipment that is qualified to meet the State hospital code requirements is tailored for mobile van installation.").  Thus the Court determines that this claim language is a structural limitation.

MMIC proposes that the term be construed as "an operating table or similar structure and one or more instruments or pieces of equipment for performing invasive surgery."  AMoHS proposes that the term be construed as "surgical equipment required by health and other regulatory codes, and applicable standards of care, for invasive surgery at the time and place of the intended

use." MMIC's proposed language does not accurately convey the intended limitation. AMoHS's proposed language imports an additional limitation—equipment required by applicable standards of care—that does not appear in the patent. Consistent with the description in the specification, the term is construed as "equipment required by health, building and other regulatory codes for invasive surgery at the time and place of the intended use."

C. **Main body section that is capable of being towed, mounted on wheels for mobility by a separate power section (Claim 1)**
**Main body portion being mounted on wheels for mobility by a detachable trailer section (Claim 12)**
**Main van mounted on wheels for mobility by a detachable trailer section (Claim 30 via 24)**

The parties' competing definitions do not differ substantially and are similar or identical for the three claims. The terms are construed in Claim 1 as "a main body having wheels that are suitable for use in travel on the roads and highways that is capable of being towed by a separate power section." In Claim 12 the similar language is construed as "a main body portion having wheels that are suitable for use in travel on the roads and highways that is capable of being towed by a separate trailer." In Claim 30 as it depends from Claim 26 as it depends from Claim 24 the language is construed as "a main trailer having wheels that are suitable for use in travel on the roads and highways that is capable of being towed by a separate trailer."

### D.   Telescoping side sections (Claim 1)

MMIC proposes that the term be construed as "each expansible side consists of a front, rear, and side walls, floor and roof, all integrated to form a rigid structure that can slide laterally outwardly from within the main van body."  AMoHS proposes "side sections of the main body of the van that may be expanded or retracted relative to the main body as a single integral unit, with the exception of the floor."

The chief dispute in construction of this term is whether the floor may, must or cannot telescope.  The patent describes the expandable sides of a preferred embodiment of the invention as "single integral unit[s] with exception of the floor which is hinged to the expanding sides."  '435 patent, col.5 l.67-68; *see also* '435 patent, col.6 l.21-22 ("The expanding sides have hinged floor panels.").

"[T]he distinction between using the specification to interpret the meaning of a claim and importing limitations from the specification into the claim can be a difficult one to apply in practice."  *Phillips*, 415 F.3d at 1323.  The question is "how a person of ordinary skill in the art would understand the claim terms."  *Id.*  In this case the patent itself offers guidance where it states explicitly that the claimed invention is not limited to the preferred embodiment:

> Our invention is, however, susceptible to modifications
> and alternate constructions from the embodiments shown

in the drawings and described above.  Consequently, it
is not the intention to limit the invention to the
particular embodiments disclosed.  On the contrary, the
invention is intended and shall cover all
modifications, sizes and alternate constructions
falling within the spirit and scope of the invention,
as expressed in the appended claims when read in light
of the description and drawing.

'435 patent col.9 l.18-29.

To interpret the telescoping side sections as requiring that the floor be hinged to the expanding sides would improperly import this limitation from the specification. **more?**

The term is construed as "side sections of the main body of the van that slide outwardly from within the main body."

E.  **Expanded invasive surgery room (Claims 1 & 12)**
    **Expanded centralized invasive surgery room (Claim 30**
    **via Claim 24)**

These phrases combine terms whose construction is not disputed.  MMIC proposes that the terms be construed as "a room within which invasive surgery may be performed that is formed when the expandable portion of the main body of the van is moved outwardly to its expanded state."  AMoHS proposes that the terms be construed as "a space in the van that meets the requirements for invasive surgery, as defined in applicable health and other regulatory codes, and applicable standards of care, at the time and the place of intended use, which space has a floor area that is greater than that contained within the nominal exterior dimensions of the van when not expanded."

In support of its proposed construction, AMoHS stresses that
the inventor's intent was to create a mobile operating room that
would include "all of the essential facilities for complete
invasive surgical procedures . . . heretofore found only in fixed
surgical facilities."  '435 patent, col.2 l.15-20.  The
Description of the Preferred Embodiment states that "construction
of the mobile surgical room **100** will follow closely" the OSHPOD
guidelines, '435 patent col.4 l.37-40, and states generally:

> To ensure the highest quality of medical care, well
> trained personnel are providable in designated areas of
> van **100.**  In addition to the presence of competent
> surgeons in area **150**, an anesthesiologist as well as
> surgical technician instruments will be present during
> operations to assist surgeons.  There is ample room for
> two registered nurses who will provide patient care and
> may circulate as needed in the operating room **150** as
> well as in the pre and post-op areas **175.**

'435 patent col.5 l.11-19.  It then provides typical dimensions
for the invention, including the expanded width.  '435 patent
col.5 l. 27-36.  AMoHS argues that therefore the term "expanded
invasive surgery room" must mean a space that meets applicable
regulatory requirements.

As discussed above with respect to surgical equipment, the
inventor clearly intended to claim a surgical space that, when
expanded, would satisfy the requirements of invasive surgery in a
fixed hospital facility.  None of the claims however address any
aspect of the dimensions of the operating room, other than its
location in the expandable portion of the van, and there is no

justification for importing the preferred embodiment's general or specific dimensions into the claims.  Nothing in the '435 patent indicates that the terms "expanded invasive surgery room" or "expanded centralized invasive surgery room" themselves were to be accorded any specialized meaning.  One skilled in the art may conclude that in order to equip the van with essential equipment for invasive surgery the expanded space must be a certain size, or that once so equipped the space will meet regulatory requirements; that is not the same as concluding that the inventor meant to incorporate regulatory requirements into these terms.

Consistent with the construction of the terms "expanded" and "invasive surgery," the terms in combination are construed as "room within which invasive surgery can be performed that has an increased volume and area than the dimensions of the van when not expanded."

**F.  Stowable (Claim 1)**

MMIC proposes that the term be construed as "positioned or positionable so that when the expanded side sections are being nested or expanded the item is not removed from the van."  AMoHS proposes that the term be construed as "positionable."  Neither definition conveys the ordinary meaning of the term, and neither party has pointed to evidence that the term is used in any specialized way in the patent or by persons of skill in the art.

The term is given its ordinary meaning, and is construed as "able to be stored."

## G.    Nested, nesting (Claims 1, 3, 12, 14 & 30)

MMIC proposes that the term be construed as "unexpanded and/or reduced in interior volume."  AMoHS proposes that the term be construed consistent with its ordinary meaning as "condition in which an inner piece has been moved to fit within a similarly shaped but larger piece."  In the specification, the inventor states that "[a]fter use and when the van is to be moved [the] surgical table may be swiveled to a stowage position and the sides of the van nest together around that table."  '435 patent col.2 l.39-42.

MMIC's proposed definition is broad, broader than the ordinary meaning of the term, and does not adequately address the notion of something fitting inside something else.  AmoHS's definition however adds a limitation that does not appear in the claims or the specification, of an inner piece that fits within a similarly shaped larger piece.  The term is given its ordinary meaning, and is construed as "fit or fitting together compactly within one another."

## H.    Means for rolling said table and securing same when not in use for surgery (Claim 6)

Claim 6 recites a surgical instrument table and "means for rolling said table and securing same when not in use for surgery."  '435 patent col.10 l.18-20.  This is a "means-plus-

function" claim, and is "construed to cover the corresponding structure, material, or acts described in the specification and equivalents thereof."  35 U.S.C. § 112(f).

The specification twice refers to a rolling surgical instrument table in listing essential items of surgical equipment and supplies.  *See* '435 patent col.3 l. 64; col.8 l.19.  Figure 3 shows the table with wheels.  *See* '435 patent fig. 3 at 5.  The specification thus indicates that wheels or their equivalents are the means for rolling the table.  There is no disclosure of means for securing the instrument table when it is not in use, however. AMoHS points out that the specification discloses that the invention's operating table may have retractable wheels and that this is evidence that the inventor intended that tables of any sort within the mobile operating room could be moved or secured by retractable wheels.

"'[S]tructure disclosed in the specification is 'corresponding' structure *only* if the specification or prosecution history clearly links or associates that structure to the function recited in the claim.  This duty to link or associate structure to function is the *quid pro quo* for the convenience of employing § 112, ¶ 6.'"  *Saffran v. Johnson & Johnson*, 712 F.3d 549, 562 (Fed. Cir. 2013) (quoting *B. Braun Med., Inc. v. Abbott Labs.*, 124 F.3d 1419, 1424 (Fed. Cir. 1997)).  Absent adequate disclosure, the inventor "'has in effect

failed to particularly point out and distinctly claim the invention as required by [§ 112(b)].'" *Noah Sys., Inc. v. Intuit Inc.*, 675 F.3d 1302, 1311-12 (Fed Cir. 2012) (quoting *AllVoice Computing PLC v. Nuance Commc'ns., Inc.*, 504 F.3d 1236, 1241 (Fed Cir. 2007)).  Although the specification must disclose some structure, a patentee need not disclose details of structures well known in the art, however.  *See, e.g., Default Proof Credit Card Sys., Inc. v. Home Depot U.S.A., Inc.*, 412 F.3d 1291, (Fed. Cir. 2005).

"Whether a specification adequately sets forth structure corresponding to a claimed function is viewed from the perspective of one skilled in the art."  *HTC Corp. v. IPCom GmbH & Co., KG*, 667 F.3d 1270, 1279 (Fed Cir. 2012).  The specification does not literally disclose a surgical instrument table with retractable wheels, yet it is possible that one skilled in the art would understand that any rolling surgical table would have to be equipped with retractable wheels.

The term needs no further construction at this time. Whether Claim 6 must be found invalid for indefiniteness requires factual development, specifically evidence concerning whether one skilled in the art would have understood that a rolling surgical instrument table would have to be equipped with retractable wheels.

Dated at Burlington, in the District of Vermont, this 24th day of July, 2013.

/s/ William K. Sessions III

William K. Sessions III

District Court Judge