```
                    UNITED STATES DISTRICT COURT
                             FOR THE
                       DISTRICT OF VERMONT
```

MOBILE MEDICAL INTERNATIONAL      :
CORPORATION,                      :
                                  :
     Plaintiff,                   :
                                  :
          v.                      :   Case No. 2:07-cv-231
                                  :
ADVANCED MOBILE HOSPITAL          :
SYSTEMS, INC., TRACTUS            :
MEDICAL, INC., and JOHN           :
DOES 1-10,                        :
                                  :
     Defendants.                  :

**OPINION AND ORDER**

Plaintiff Mobile Medical International Corporation ("MMIC") seeks a declaratory judgment with respect to the validity and non-infringement of U.S. Patent No. 4,915,435 (the "'435 Patent"). Defendants Advanced Mobile Hospital Systems, Inc. ("AMoHS") and Tractus Medical, Inc. ("Tractus") have counterclaimed for patent infringement. Tractus is a subsidiary of AMoHS and owner of the '435 Patent. Now before the Court are motions of AMoHS and Tractus (collectively "AMoHS") (1) to show cause why the case should not be dismissed and a default entered (ECF No. 172), and (2) to compel documents withheld on the basis of attorney-client privilege and the common interest doctrine (ECF No. 173). For the reasons set forth below, those motions are **denied**.

**I.   Motion For Order to Show Cause**

AMoHS seeks an order to show cause why, after counsel for

MMIC withdrew from the case, new counsel did not enter an appearance within 30 days as required by the Court.  AMoHS also asks the Court to order that MMIC show cause why its claims should not be dismissed for failure to prosecute.

On June 13, 2014, the Court granted an *ex parte* motion filed by then-counsel for MMIC requesting leave to withdraw.  The Court's sealed order required MMIC to retain new counsel, and for that attorney to enter an appearance within 30 days.  On July 10, 2014, MMIC filed a motion for extension of time in which to respond to various pending matters, explaining that Attorney Janssen Willhoit had agreed to step in as counsel but had not yet been admitted to the bar of this Court.  The Court granted MMIC's motion on July 11, 2014, allowing MMIC 60 days after the date of Attorney Willhoit's admission to respond to various pending motions.

On August 29, 2014, MMIC filed its pending motion for an order to show cause why the case should not be dismissed for failure to prosecute, noting that Attorney Willhoit had not yet been admitted or entered an appearance.  Attorney Willhoit was admitted to the bar of this Court on October 3, 2014, and noticed his appearance on behalf of MMIC on October 7, 2014.  In accordance with the Court's July 11, 2014 Order, he then filed responses and replies to pending matters within 60 days of his admission.  He has not opposed the motion to show cause.

One of AMoHS's objections when it filed its motion was that MMIC, by failing to fix a date for Attorney Willhoit's admission, had essentially obtained an indefinite stay of the case.  Since AMoHS's filing, however, the question of representation has been resolved and various motions are ripe for decision.  Indeed, Attorney Willhoit timely complied with the Court's July 11, 2014 Order and submitted a series of filings within 60 days of his admission.  In light of these facts, the motion for an order to show cause (ECF No. 172) is **denied.**

**II.  Motion to Compel**

AMoHS next moves to compel production of an April 2010 email that reportedly contains legal advice.  The email was shared with MMIC board member Walter Beinecke, a partner at private equity firm and MMIC investor Brook Venture Partners ("BVP").  Mr. Beinecke forwarded the email to another BVP partner, Fred Morris, who served as Mr. Beinecke's backup partner on the MMIC investment.  According to Mr. Beinecke's deposition testimony, BVP regularly assigns a backup partner "for most of our deals here . . . and that generally means a partner who is inactive, except in the case of, you know, death or disability of the lead partner, will step in and perform the duties of the lead partner."  ECF No. 173-4 at 4.

MMIC has refused to produce the email, claiming attorney-client privilege.  AMoHS argues that by forwarding the email to

Mr. Morris, Mr. Beinecke waived that privilege.

The attorney-client privilege protects confidential communications between client and counsel made for the purpose of obtaining or providing legal assistance. *United States v. Constr. Prods. Research, Inc.*, 73 F.3d 464, 473 (2d Cir. 1996). The Court construes the privilege narrowly because it renders relevant information undiscoverable, applying it "only where necessary to achieve its purpose." *Fisher v. United States*, 425 U.S. 391, 403 (1976); *see In re Grand Jury Investigation*, 399 F.3d 527, 531 (2d Cir. 2005). The burden of establishing the applicability of the privilege rests with the party invoking it. *In re Grand Jury Proceedings*, 219 F.3d 175, 182 (2d Cir. 2000).

In this case there is no dispute that the April 2010 email was privileged when it was in the possession of Mr. Beinecke. MMIC has argued that when Beinecke forwarded the document to Mr. Morris, he did not waive the privilege in light of "the evident intent to preserve confidences, the confidential nature of the certain matter, and the community of interest shared by all known recipients." ECF ECF No. 173-2 at 2. This latter claim to a "community of interests" invokes the common interest doctrine, which extends "the attorney client privilege to privileged communications revealed to a third party who shares a common legal goal with the party in possession of the original privilege." *TIFD III-E Inc., v. United States*, 223 F.R.D. 47, 50

(D. Conn. 2004) (citing *United States v. Schwimmer*, 892 F.2d 237 (2d Cir. 1989)). "A community of interest exists among different persons or separate corporations where they have an identical legal interest . . . . The key consideration is that the nature of the interest be identical, not similar, and be legal, not solely commercial." *In re F.T.C.*, 2001 WL 396522, at *3 (S.D.N.Y. Apr. 19, 2001) (citation omitted). "The Second Circuit follows a strict interpretation of the common interest rule, under which '[o]nly those communications made in the course of an ongoing common enterprise and intended to further the enterprise are protected.'" *United States v. Agnello*, 135 F. Supp. 2d 380, 382 (E.D.N.Y. 2001) (quoting *Schwimmer*, 892 F.2d at 243).

The question presented here is whether two private equity partners, only one of which was directly involved in MMIC's governance, shared a sufficient community of interests to preserve the attorney-client privilege. This case is likely unique in that Mr. Morris was specifically designated as Mr. Beinecke's "backup" on the MMIC investment. Accordingly, Mr. Morris was different from other partners at BVP, BVP staff, and other MMIC investors generally. *See Stirum v. Whalen*, 811 F. Supp. 78, 82 (N.D.N.Y. 1993) (finding that the attorney-client privilege did not apply to communications between the defendant's attorneys and its investors). On these limited facts, the Court finds that Mr. Morris and Mr. Beinecke were engaged in a common

5

enterprise, and to the extent that Mr. Beinecke's interest was legal rather than commercial, so too was the interest of Mr. Morris as his backup.  The motion to compel (ECF No. 173) is therefore **denied**.

Dated at Burlington, in the District of Vermont, this 24th day of February, 2015.

/s/ William K. Sessions III
William K. Sessions III
District Court Judge